## IOWA-DES MOINES NATIONAL BANK *v.* BENNETT, CHAIRMAN, ET AL.*

No. 15.   Argued October 19, 20, 1931.—Decided December 14, 1931.

*Messrs. J. G. Gamble* and *A. B. Howland* for petitioners.

---

* Together with No. 16, *Central State Bank* v. *Bennett, Chairman, et al.*

*Messrs. Eskil C. Carlson* and *Charles Hutchinson,* with whom *Messrs. Maxwell A. O'Brien* and *George A. Wilson* were on the brief, for respondents.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

These cases are here on certiorari to the Supreme Court of Iowa. They were argued together and involve, in the main, the same questions. The petitioner in No. 15 is the Iowa-Des Moines National Bank. The petitioner in No. 16 is the Central State Bank, an Iowa corporation. In each case, it is charged that, for the years 1919, 1920, 1921 and 1922, the taxing officers of Polk County exacted from petitioner taxes on shares of its stock at rates higher than were exacted of competing moneyed capital; and that in 1923 petitioner paid the taxes with interest and penalties under protest, after threat of seizure of its property. In each case it is alleged that this unequal taxation contravened both the state law and the equal protection clause of the Fourteenth Amendment. In No. 15, it is also charged that § 5219 of the Revised Statutes of the United States was violated. In each case the petitioner seeks by an action of mandamus to compel the appropriate county officers to refund the part of the taxes alleged to have been illegally exacted, and the interest and penalties. The county officers denied the discrimination charged and also set up many special defenses.

The trial court, after hearings which occupied more than sixteen weeks, denied relief in each case without making findings of fact or rendering an opinion. Its judgments were affirmed in the highest court of the State by a divided bench. 232 N. W. 445. The case is before us on an extensive record; but we have no occasion to examine the controverted issues of fact and of state law.

The Supreme Court found, or assumed, that the systematic discrimination charged was in fact made; that the shares of the favored domestic corporations constituted a relatively material part of other moneyed capital employed in substantial competition with the business of the banks; and that the unequal exaction complained of violated the laws of Iowa. We have to consider only the legal effect under the federal law of this wrongful administration of the state law. There is no challenge of the validity of any state statute.

The taxes exacted from the petitioners were laid under Iowa Code, § 1322–1a, Supplement 1913. That section imposes upon "state, savings and national bank stock and loan and trust company stock and moneyed capital," an *ad valorem* tax based upon twenty per cent. of the actual value thereof, computed at the same rate at which tangible property is taxed under the consolidated levy for local, county and state purposes. Compare *First National Bank* v. *Anderson*, 269 U. S. 341, 343. For the years in question, this levy ranged from 137.8 mills to 164 mills—the equivalent of 27.5 mills to 32.8 mills on the actual value. By the terms of § 1322–1a, taxes on the same basis should also have been laid upon shares of competing domestic corporations and upon other moneyed capital coming similarly into competition with both the national and the state banks. But the taxes laid upon shares of such competing domestic corporations were, in fact, at the rate of only 5 mills on the actual value. This discrimination occurred because to them was applied, not § 1322–1a, but § 1310, Supplement 1913. The latter section prescribes a tax of 5 mills on the dollar upon the full value of "moneys, credits and corporation shares of stock, except as otherwise provided, . . . and notes, including those secured

by mortgage, . . ."[1]  Thus the taxes laid upon the shares of the competing domestic corporations were at a rate only one-fifth to one-seventh of ᐧthat applied to the shares of the petitioners.

The wrongful discrimination so effected was not attributable to any act of the assessing body.[2]  The shares in such competing domestic corporations had, in each year, been properly classified by the assessor in compliance with § 1322–1a; but the county auditor, in making up the tax list subsequently, changed these assessments and wrongfully extended them upon the books as "moneys and credits" subject to the 5 mill levy.  In this form the tax was certified by the auditor to the county treasurer for collection; and the treasurer exacted taxes in accordance with the auditor's certification.

The Supreme Court of Iowa, having found or assumed that there was systematic discrimination, as charged, in favor of shares in the competing domestic corporations, denied relief because it held that the auditor's acts in disregarding assessments properly made were a usurpa-

---

[1] Section 1310 expressly excepts from its operation "all moneyed capital within the meaning of section fifty-two hundred nineteen of the Revised Statutes of the United States," and provides that such capital "shall be listed and assessed . . . at the same rate as state, savings, national bank and loan and trust company stock is taxed . . ., and at the actual value of the moneyed capital so invested."

[2] Other competing moneyed capital in the form of investments held by individuals and by a few foreign corporations was wrongfully classified by the assessor as "moneys and credits," and so returned upon the assessment rolls to the county auditor, who extended the assessments upon the tax books accordingly, and applied to them the 5 mill levy.  The Supreme Court of Iowa held that the right to complain of this discrimination had been lost by failure to avail of the method of review prescribed by the State.  We have no occasion to consider this matter, as we hold that the more favorable taxation of the competing domestic corporations entitles the petitioners to the relief sought.

tion of power and a nullity; that the county treasurer was not bound to accept the auditor's unauthorized certification; and that his exaction of the taxes in accordance therewith was, therefore, also unauthorized.[3] The Court declared that, since the wrongful exaction was made without authority from the State, it did not constitute discrimination by the State; declared that, since neither the auditor nor the treasurer had power to discharge a legally assessed tax, the competing domestic corporations remain, so far as appears, liable for the balance of the assessments; and held that the petitioners had no other remedy than to await action by the taxing authori-

---

[3] The Iowa court describes (232 N. W. at p. 451) the functions of the several taxing officers: "The assessment is made in the first instance by the local assessor, who lists and classifies the property and makes valuations. He then lays the assessment rolls before the local board of review. The local board of review adjusts the assessments, 'in such manner as to secure the listing of property at its actual value and the assessment of property at its taxable value' and adds 'to the assessment rolls any taxable property not included therein . . . as the assessor should have done.' Code Supp. 1913, §§ 1360, 1370. When the corrections have been made, the assessor makes up the assessor's book and returns it to the county auditor together with the assessment rolls. *Id.* § 1366. The county board of review equalizes class valuations between political subdivisions of the county, and the state board of review equalizes between the counties. *Id.* Code 1897, §§ 1375, 1379. The classification and assessment by the assessor, as approved by the board of review, determines the levy or rate to be applied. . . The assessments and the rate to be paid by the several taxpayers as between themselves are complete and are determined when the assessor returns the assessment rolls and assessment book to the county auditor, subject to class modification by the county and state boards of review and to change by the court if appeal has been taken. The remainder of the process of taxation is one of collection and enforcement of the taxes as so assessed. This is ministerial. The auditor's duty is to transcribe the assessments into the tax book and make the necessary computations and extensions and clerical corrections. This duty is merely clerical and ministerial."

ties to collect the taxes remaining due from their competitors or to initiate proceedings themselves to compel such collection. In other words, it held that no right of petitioners under the state law was violated, because they were not overassessed; that no right under the federal law was violated, because the lower taxation of their competitors due to usurpation by officials was not an act of the State; and that the discrimination thus effected was remediable only by correcting the wrong under the state law in favor of the competitors and not " by extending . . . the benefits as of a similar wrong " to the petitioners. The decision rests upon a misconception of the scope and effect of the federal rights involved.

*First.* The Iowa-Des Moines National Bank is an instrumentality of the United States, and but for § 5219 the State would be without power to tax its shares. *First National Bank* v. *Anderson,* 269 U. S. 341, 347. That section permits a State to tax national bank shareholders if, and only so far as, the taxation is not at a rate greater " than is assessed upon other moneyed capital in the hands of individual citizens of such State." The limits of this permission were transgressed when the treasurer exacted from this petitioner taxes at rates greater than those applied in exacting payment from the competing domestic corporations. *Supervisors* v. *Stanley,* 105 U. S. 305, 318; *Stanley* v. *Supervisors of Albany,* 121 U. S. 535, 550, 551. Compare *First National Bank of Hartford* v. *Hartford,* 273 U. S. 548, 560. The discrimination was none the less action by the State although the auditor and the treasurer, in failing to give equal treatment, acted without authority and contrary to the law of the State. " It is a question of the power of the State as a whole; " [4]

---

[4] *Rippey* v. *Texas,* 193 U. S. 504, 509, citing *Missouri* v. *Dockery,* 191 U. S. 165, 171. Compare *Coulter* v. *Louisville & Nashville R. Co.,* 196 U. S. 599, 609; *Hayman* v. *Galveston,* 273 U. S. 414, 416.

_and for the purpose of determining whether the limitations imposed by § 5219 have been observed, the powers of the several state officials must be treated as if merged in a single officer. The condition imposed by the federal law was not satisfied by the enactment by the State of appropriate legislation for the taxation of other moneyed capital, and the commitment to subordinate officers of the duty of determining what constitutes such capital. The responsibility of the State for the propriety of that determination remained. Moreover, since the State now insists upon retaining the higher tax exacted from the national bank, and is sustained in so doing by its highest court, the discriminatory action cannot be said to be the act of the individual officials. *Montana National Bank* v. *Yellowstone County,* 276 U. S. 499, 504, 505.

*Second.* Both petitioners claim that they have been subjected to intentional, systematic discrimination in violation of the equal protection clause of the Fourteenth Amendment. The federal right of the Central State Bank rests wholly upon that clause. It is assumed that there was such inequality of treatment as the Constitution prohibits. *Raymond* v. *Chicago Union Traction Co.,* 207 U. S. 20, 37; *Sioux City Bridge Co.* v. *Dakota County,* 260 U. S. 441, 446; *Cumberland Coal Co.* v. *Board of Revision, ante,* p. 23. Compare *Sunday Lake Iron Co.* v. *Wakefield,* 247 U. S. 350, 353. But the Iowa court, without denying the lack of power of the State to authorize the discrimination effected, holds that such discrimination does not violate the federal Constitution because it resulted from the act of private individuals and not of the State. The prohibition of the Fourteenth Amendment, it is true, has reference exclusively to action by the State, as distinguished from action by private individuals. *Virginia* v. *Rives,* 100 U. S. 313, 318; *United States* v. *Harris,* 106 U. S. 629, 639. But acts done " by virtue of a public position under a State Government

. . . and in the name and for the State," *Ex parte Virginia*, 100 U. S. 339, 347, are not to be treated as if they were the acts of private individuals, although in doing them the official acted contrary to an express command of the state law. When a state official, acting under color of state authority, invades, in the course of his duties, a private right secured by the federal Constitution, that right is violated, even if the state officer not only exceeded his authority but disregarded special commands of the state law.[5] Here, the exaction complained of was made by the treasurer in the name of and for the State, in the course of performing his regular duties; the money is retained by the State; and the judicial power of the State has been exerted in justifying the retention. Compare *Montana National Bank* v. *Yellowstone County, supra; Carpenter* v. *Shaw*, 280 U. S. 363, 369.

Respondents rely upon *Barney* v. *City of New York*, 193 U. S. 430, 438. The question there decided was that the lower federal court had properly dismissed a bill in equity since it appeared upon its face that the act complained of was forbidden by the state legislation. We have no occasion to discuss that case.[6] Here the petition-

[5] *Neal* v. *Delaware*, 103 U. S. 370, 397; *Yick Wo* v. *Hopkins*, 118 U. S. 356, 373, 374; *Home Telephone & Telegraph Co.* v. *Los Angeles*, 227 U. S. 278, 287, 288; *Cuyahoga Power Co.* v. *Akron*, 240 U. S. 462, 464. Compare *Raymond* v. *Chicago Union Traction Co., supra; Greene* v. *Louisville & Interurban R. Co.*, 244 U. S. 499, 507, 508; *Fidelity & Deposit Co.* v. *Tafoya*, 270 U. S. 426, 434; *Hopkins* v. *Southern California Telephone Co.*, 275 U. S. 393, 398. See also *Chicago Great Western Ry. Co.* v. *Kendall*, 266 U. S. 94, 98. Cases discussing the question of what constitutes a suit against the State within the meaning of the Eleventh Amendment, such as *Ex parte Young*, 209 U. S. 123; *Western Union Telegraph Co.* v. *Andrews*, 216 U. S. 165; *Looney* v. *Crane Co.*, 245 U. S. 178; *Public Service Co.* v. *Corboy*, 250 U. S. 153, have no bearing upon the power of this Court to protect rights secured by the federal Constitution.

[6] See Samuel Shepp Isseks, "Jurisdiction of the Lower Federal Courts to Enjoin Unauthorized Action of State Officials," 40 Harv. L. Rev. 969.

ers sued in a state court. Some expressions in the opinion in the *Barney* case, said to be inconsistent with the conclusions stated above, have been disapproved by this Court. *Home Telephone & Telegraph Co.* v. *Los Angeles,* 227 U. S. 278, 294.

*Third.* The fact that the State may still have power to equalize the treatment of the petitioners and the competing domestic corporations by compelling the latter to pay hereafter the unpaid balance of the amounts assessed against them in 1919, 1920, 1921 and 1922 is not material. The petitioners' rights were violated, and the causes of action arose, when taxes at the lower rate were collected from their competitors. It may be assumed that all ground for a claim for refund would have fallen if the State, promptly upon discovery of the discrimination, had removed it by collecting the additional taxes from the favored competitors. By such collection the petitioners' grievances would have been redressed; for these are not primarily overassessment. The right invoked is that to equal treatment; and such treatment will be attained if either their competitors' taxes are increased or their own reduced. But it is well settled that a taxpayer who has been subjected to discriminatory taxation through the favoring of others in violation of federal law, cannot be required himself to assume the burden of seeking an increase of the taxes which the others should have paid. *Cumberland Coal Co.* v. *Board of Revision, supra; Greene* v. *Louisville & Interurban R. Co.,* 244 U. S. 499, 514–518; *Chicago Great Western Ry. Co.* v. *Kendall,* 266 U. S. 94, 98; *Sioux City Bridge Co.* v. *Dakota County, supra.* Nor may he be remitted to the necessity of awaiting such action by the state officials upon their own initiative. *Montana National Bank* v. *Yellowstone County, supra.*

The petitioners are entitled to obtain in these suits refund of the excess of taxes exacted from them.

*Reversed.*