CHARLES E. READ et al., Appellants, v. HAMILTON COUNTY et al., Appellees.

No. 45915.

May 12, 1942.

Sterling Alexander, for appellants.

Lloyd Karr and John E. Mulroney, for appellees.

WENNERSTRUM, J.—Appellants brought an action seeking a writ of mandamus to annul a change in classification of appellants' property, made by the board of supervisors of Hamilton County, and covering certain property of the respective appellants which was assessed for taxes during the year 1940. The appellants, in this same action, further sought an injunction to restrain and enjoin the county treasurer from collecting personal taxes assessed against them, which were based upon the change in valuation and classification as made by the board of supervisors. They also sought an injunction against the state tax commission to restrain it from attempting to order the change in classification which had been previously made, or from ordering the local board of review of Hamilton township to reconvene and make the same change that the board of supervisors had made. After trial of the issues presented, the district court found and held that the board of supervisors and county auditor had authority to change the classification and valuation of appel-

lants' personal property as returned in their individual assessment rolls and that this revaluation and reclassification was properly made. The court further found that the order of the state tax commission directing the reconvening of the local board of review of Hamilton township for the year 1940 was unnecessary and void, and that appellants' petition should be dismissed as to the township trustees acting as a local board of review, and the state tax commission. A decree was entered in keeping with the court's ruling, and plaintiffs have appealed.

The record, as shown by the evidence presented and the stipulation of facts submitted to the trial court, discloses that the assessor of Hamilton township did not list any "cattle in feeding" by any of the appellant taxpayers who are parties to this action. The animals which were later reclassified by the board of supervisors had been assessed as "steers one year old." It is further shown that the township trustees, acting as a local board of review, made no change in the classification or valuation of appellants' property before it adjourned on May 1, 1940. It is further disclosed by the evidence and stipulation presented to the trial court that at the time the board of supervisors took up its duties as an equalization board, as provided by section 7137, 1939 Code of Iowa, it was observed that Hamilton township was the only township in the county wherein there was no assessment of property of the class designated as "cattle in feeding," although, as stated by the chairman of the board of supervisors of Hamilton County, " * * * there was practically as many or possibly more cattle fed in Hamilton township than any other township in the county." The board of supervisors, by virtue of the provisions of section 7127, 1939 Code of Iowa, authorizing the examination of assessors for the purpose of ascertaining the method used in fixing valuations, summoned the assessor of Hamilton township to appear before it. At this conference between the board of supervisors and the assessor of Hamilton township, the manner of assessment of the cattle of the respective appellant taxpayers was considered. The chairman of the board testified relative to this conference, and further stated:

"In each and every one of those that had cattle in feeding, he acquiesced in each change that was made. It was largely on the assessor's information that these changes were made."

It is disclosed by the stipulation presented to the trial court that the several appellants in this action had given to the assessor of Hamilton township, in the manner as provided by law, a sworn assessment roll listing. "steers one year old." The stipulation further showed that the assessor valued this property for assessment purposes as listed by individual taxpayers. As to the reason for this particular manner of assessment, the chairman of the board further testified:

"I don't recall just now what his [assessor's] statements were in regard to that. However, it was to the effect that the property owners insisted that they be put in as year olds."

As a result of the conference between the members of the board of supervisors, sitting as a board of review, and the township assessor, the board passed a resolution which provided that:

"* * * 1029 head of one year old steers in Hamilton Township be changed from the one year old classification and placed under the classification of cattle in feeding and that the valuation (after the last above change) on cattle in feeding in Hamilton Township be and is hereby increased 27%."

It was also shown by the stipulation that the county auditor of Hamilton County, pursuant to the direction of the resolution passed by the board of supervisors, changed the classification of appellants' cattle from "steers one year old" to "cattle in feeding" and raised the valuation thereon in the amount of 27 per cent. It is also shown by the stipulation that there were certain proceedings in connection with the change of classification and valuation before the state tax commission, but inasmuch as the trial court held that the order of that commission was unnecessary and should be set aside and declared null and void no further comment will be made concerning those particular proceedings.

The sole issue before this court appears to be whether or not the county board of supervisors, acting as a board of review, has the authority to change the classification and valuation of personal property as returned by individuals in their assessment rolls, after such assessment has been passed upon by the local township board of review without change. The issue is further

succinctly stated in the ruling of the trial court wherein it raised the inquiry as to whether the board of supervisors, acting as a county board of review, can "make in their review proceedings an order changing a classification error of an assessor, which order, although having the result of raising individual assessments, still places the property owned by the plaintiffs in the correct classification."

In other words, can the county board of supervisors acting as a board of review and under its authority (section 7137, 1939 Code of Iowa) to "adjust the assessments of the several townships * * * of their county at their regular meeting in June," and under its further statutory authority to "add to or deduct from the assessed value of the property substantially as the state commission adjusts assessments of the several counties of the state," have the right to change the classification of property, which will result in increased assessment and valuation of the individual taxpayer?

A review of the manner in which classification of property for taxing purposes has developed may be of aid to us in the consideration of this problem. Section 731, Revision of 1860, provided that:

"The several assessors in each county shall meet * * * on the second Monday in January of each year, and classify the several descriptions of property to be assessed for the purpose of equalizing such assessment."

Section 821, Code of 1873, provided that:

"The board of supervisors of each county, shall, at their meeting in January in each year, classify the several descriptions of property to be assessed, for the purpose of equalizing such assessment; * * *."

Our present Code section 7137, 1939 Code, which relates to the county board of review, a portion of which has heretofore been quoted, is a development of section 739, Revision of 1860, and section 832, Code of 1873, and has substantially the same wording as set forth in the prior Codes. In neither one of the earlier statutory enactments is there any reference to the right of classification by the county board of review. The purpose of this

board is restricted to the duty to "adjust the assessments of the several townships * * * at their regular meeting in June, and add to or deduct from the assessed value of the property substantially as the state commission adjusts assessments of the several counties of the state."

Under section 739, Revision of 1860, "the board of supervisors of each county, shall constitute a board for the equalization of the assessment, and have power to equalize the assessments of the several persons and townships of the county, * * *." However, by virtue of a statutory change made by the Thirteenth Iowa General Assembly, 1870, chapter 89, the right to equalize assessments was taken from the board of supervisors, and in this connection we find this comment in Keck v. Board of Supervisors, 37 Iowa 547, 548:

"It was held in Smith v. The Board of Supervisors, etc., 30 Iowa, 531, that under section 739 of the Revision that, if the board of supervisors believed the assessment of a particular 'person or township' to be too low, they had power, at their meeting for equalizing assessments, to raise it, and on the other hand, if they believed another assessment of 'a person or township' to be too high, they had the power to reduce it. By the act of 1870, chapter 89, the power to equalize the assessments upon *persons* is taken away from the board of supervisors and conferred upon the township trustees. The latter possess that power now to the same extent as it was possessed by the former prior to the taking effect of the act of 1870."

In the case of Rood v. Board of Supervisors, 39 Iowa 444, 445, we find this further comment relative to the right of the board of supervisors to increase the assessment of property:

"The Board of Supervisors had no authority to increase the assessment of plaintiff's property. Section 739 of the Revision conferred upon the Board of Supervisors of each county authority to equalize the assessments of the several persons and townships of the county. Chapter 89, Laws Thirteenth General Assembly, constituted the township trustees of each township a board of equalization of assessments of their respective townships. Although this act contains no repealing clause, yet the exercise of the powers which it confers is inconsistent with the

authority of the Board of Supervisors to exercise the same powers, and the later statute, inconsistent with the former, must be held to repeal it by implication.

"As the Board of Supervisors had no authority to increase the assessment, the taxes levied upon such enhanced valuation are not simply irregular, but illegal. Assessment, by competent authority, is essential to the validity of a tax. Bailey v. Fisher, 38 Iowa, 229."

A further case which notes the development as to the respective duties of the township assessor, the township board of review, and the county board of review is the case of Burnham v. Barber, 70 Iowa 87, 89, 30 N. W. 20, 21.

"The board of supervisors has the power and authority to classify for the purposes of taxation and convenience of the assessor the several kinds of property subject to taxation, and a copy of such classification must be furnished each assessor. Code, § 821. But the board has no authority to fix the value of such property. For instance, milch cows may constitute one class, yearling cattle another, and those two years old another. Horses (geldings) may constitute one class, and mares another, etc. Unimproved prairie land may be classified as such; but, however classified, each description of property must be assessed and valued by the assessor. It is his judgment which the statute demands. * * * If he should assess any or all of the real estate too high, upon complaint of the taxpayer, it may be reduced, or his assessment may be either reduced or increased by the township board of equalization, and the county board of equalization may correct the assessment so as to equalize it between the several townships and towns in the county."

In the case of McCutchen v. Board of Supervisors, 95 Iowa 20, 22, 63 N. W. 455, there is found an interesting comment as to the powers of the board of supervisors in connection with their duty to classify property. It is there stated:

"Of the powers conferred upon boards of supervisors we are called upon to notice two, namely, the power to classify property for the purpose of assessment, and the power to equalize assessments. Section 821 of the Code provides that they 'shall, at their meeting in January in each year, classify the several

descriptions of property to be assessed, for the purpose of equalizing such assessments.' The section further requires that the auditor shall deliver to each assessor 'on or before the fifteenth day of January of each year, a certificate of such classification.' The purpose of this classification is that like property shall be put in the same class. Cassett v. Sherwood, 42 Iowa, 623. It is for the guidance and benefit of the assessor. Missouri Val. & B. Ry. & Bridge Co. v. Harrison Co., 74 Iowa, 283. *The purposes of classification require that it precede the assessment* [italics supplied], and hence the requirement that it be made in January of each year. It is questioned whether county boards have authority to classify real estate, but this we do not determine, as it is clear that the order in question was not made under authority of said section 821. The power to equalize assessments 'by increasing or diminishing the valuation of any piece of property, or the entire assessment of any tax-payer,' is vested in township trustees and city councils. Code, section 829. Section 832 of the Code is as follows: 'The board of supervisors shall constitute a county board of equalization, and shall equalize the assessments of the several townships, cities and incorporated towns of their county, at their regular meeting in June of each year, substantially as the state board equalizes assessments among the several counties of the state.' Section 834 requires the state board of equalization 'to equalize the valuation of real property among the several counties and towns' by adding to or taking from the aggregate valuation of real property of each county such percentage in each case as will raise or reduce the same to its proper valuation. The county board must equalize the assessments of townships, cities, and towns substantially as the state board equalizes assessments among the several counties, which is by adding to or taking from 'the aggregate valuation of real property.' The order in question does not add to the aggregate valuation of the real property in Rock Rapids, but to a part thereof, the part used for a particular purpose,—farm lands. It is not substantially as the state board equalizes assessments. With the same propriety might the county board add to the valuation of business property or residence property, or to the real property in a particular part of the assessorial district. In Getchell v. Supervisors, 51 Iowa, 107, it is held that a county board has no

authority to increase the assessments on the real property in a part of an assessorial district."

Later in this same case this court further stated at page 24:

"Having in mind the purpose of classification, it is clear that they must be made at the time fixed; *surely it cannot be after assessment.*" (Italics supplied.)

In Fort Madison Sec. Co. v. Maxwell, 202 Iowa 1346, 1348, 212 N. W. 131, 132, this court summarized the proceedings relative to classification and assessment of properties, and in commenting thereon stated:

"Under these provisions of the statutes, in force at the time of the assessments in question, it was clearly the duty and function of the assessor, in the first instance, and of the board of review, to determine whether given money and securities belonging to a corporation other than a bank or trust company were to be listed and assessed as moneyed capital, * * *."

Further in this opinion, this court said at page 1349:

"Even where, as would appear to be the case in the assessments in question, and as is now required by Section 7008, Code of 1924, the value of moneys and credits belonging to such a corporation is assessed to the corporation, the question of whether given property is to be assessed as moneys and credits or moneyed capital is to be determined by the assessor, subject to review and correction by the board of review. In Griswold L. & C. Co. v. County of Calhoun, 198 Iowa 1240, where it was claimed that the property of a corporation engaged in the loan and investment business had been erroneously classified by the assessor and listed for taxation on the basis of banks and loan and trust companies, and not on the basis of moneys and credits, we said:

" 'All that remained was for the proper officers to apply the rate of taxation to the assessment on the basis shown by the return of the assessor. * * * The irregularity in the classification and assessment of the property was peculiarly within the jurisdiction of the board of review, and complaint should have been made to that body.'

"The determination by the assessor of the question whether

1264

given property is to be assessed as moneys and credits or moneyed capital involves the exercise of judgment and discretion."

A further statement of this court which bears upon the question as to the manner in which a classification and assessment shall be made is noted in the case of Iowa Nat. Bk. v. Stewart, 214 Iowa 1229, 1239, 232 N. W. 445, 451, where we said:

"The assessment is made in the first instance by the local assessor, who lists and classifies the property and makes valuations. He then lays the assessment rolls before the local board of review. The local board of review adjusts the assessments 'in such manner as to secure the listing of property at its actual value and the assessment of property at its taxable value,' and adds 'to the assessment rolls any taxable property not included therein * * * as the assessor should have done.' Code Supp. 1913, Section 1370. When the corrections have been made, the assessor makes up the assessor's book and returns it to the county auditor together with the assessment rolls. Id. Section 1366. The county board of review equalizes class valuations between political subdivisions of the county and the state board of review equalizes between the counties. Id. Code 1897, Sections 1375, 1379. The classification and assessment by the assessor, as approved by the board of review, determine the levy or rate to be applied. * * *

"The assessments and the rate to be paid by the several taxpayers as between themselves are complete and are determined when the assessor returns the assessment rolls and assessment book to the county auditor, subject to class modification by the county and state boards of review and to change by the court if appeal has been taken."

This last-quoted case was reversed by the Supreme Court of the United States in Iowa-Des Moines Nat. Bk. v. Bennett, 284 U. S. 239, 52 S. Ct. 133, 76 L. Ed. 265. However, the reversing opinion in no way affected the portion of the quoted opinion heretofore set out.

See, also, Tally v. Brown, 146 Iowa 360, 370, 125 N. W. 243, 252, 140 Am. St. Rep. 282.

It appears to us that the discussion of this court in the case of Griswold Land & Credit Co. v. County of Calhoun, 198 Iowa

1240, 1242, 201 N. W. 11, 12, is quite determinative of the issues before this court. We there said:

"It thus appears that the authority of the board of review is plenary to correct errors in the classification and assessment of property and to increase or diminish the valuation fixed by the assessor. A tribunal having been created by the legislature and invested with power to hear certain complaints and grievances in the listing and assessment of property, its jurisdiction in all such matters is exclusive of all other remedies allowed by law, except as hereafter shown. [Citing cases.]

"The failure of a person aggrieved by the assessment of his property to appear before the board of review and make complaint waives his right to subsequently complain of any irregularity in the listing and assessment thereof. [Citing cases.] The attempt of the county treasurer to collect a void tax may, however, be enjoined by a court of equity." (Citing cases.)

Further in this same case, we said at page 1244:

"The board of supervisors is not a taxing body. It has no authority to increase or diminish the valuation of property returned to the board of review by the assessor in the various assessing districts."

See, also, Dickey v. Polk County, 58 Iowa 287, 289, 12 N. W. 290, 291; VanWagenen v. Supervisors, 74 Iowa 716, 717, 718, 39 N. W. 105, 106.

██ It will be observed from the authorities previously noted that if there is any error in assessment the recourse is by appeal to the proper tribunal. This tribunal has been provided for in the board of review, and in the present case is the township board of review, and, in turn, the district court on appeal. The question may come to mind as to who can or should appeal in a case such as has developed in this particular instance. The statute provides for such a situation and is found in section 7135, 1939 Code of Iowa, which is, in part, as follows:

"Appeal on behalf of public. Any officer of a county, city, town, township or school district interested or a taxpayer thereof may in like manner make complaint before said board of review in respect to the assessment of any property in the township, city,

or town and an appeal from the action of the board of review in fixing the amount of assessment on any property concerning which such complaint is made, may be taken by any of such aforementioned officers.''

If it is incumbent upon individuals to appeal from assessments that they may question as being inequitable, we feel that it is likewise incumbent upon taxing bodies and interested officials to take the same action. In that manner there is an equality as to manner of recourse. There may have been an improper valuation and classification by the assessor in this particular case, as shown by the facts, but it is better that the tax be lost to the various taxing units in this particular instance rather than to approve a procedure which is not authorized by statute and approved by the prior holdings of this court.

The appellees cite the case of Cassett v. Sherwood, 42 Iowa 623, 626, as authority for the action taken by the board of supervisors. The trial court also cited this case in its memorandum opinion and ruling. It is therein stated:

''The authority for equalizing the assessment is conferred upon the supervisors by Acts Ninth General Assembly, Chap. 173, §4, and Rev., §739. They are required by the first of these statutes to classify the property for the purpose of equalizing the assessment. The obvious purport of the section is that like property shall be put in the same class. Then the assessment, that is the value thereof, (McCready v. Sexton & Son, 29 Iowa, 356 (389)), shall be equalized; that is, property of that class in all parts of the county shall be assessed, valued, at the same rate. The action under this section is had before the property is assessed by the assessor. If the assessment be unequal when made, it may be equalized under Rev., §739. Under these provisions the board of supervisors acted; it is not shown that their act was not correct or beyond the exercise of their lawful discretion.''

It will be observed from a study of this case that in this particular action the question of valuation was involved and not reclassification. It will also be observed that the reference to section 739 relates to that particular section in the Revision of 1860. As noted in the last sentence from the last-quoted case, it

was the holding of the court that it was under the provisions of the Revision of 1860 that the board of supervisors had acted. By reason of a later legislative change as to the authority given the board of supervisors in this section, and the later pronouncements of this court, it is our conclusion that this particular case is not authority for and does not justify the action taken by the board of supervisors in the present case.

We therefore are constrained to hold that the **trial court** was in error in denying the writ of mandamus and we conclude that the writ should issue to the proper county officials, as prayed for in appellants' petition and amendment thereto, for the correction and annulment of the prior orders of the board of supervisors. We therefore reverse and remand.—Reversed and remanded.

BLISS, C. J., and OLIVER, STIGER, MILLER, and MITCHELL, JJ., concur.