**Leopoldo and Miguela CRUZ, individually, and on behalf of all persons similarly situated, Plaintiffs,**

v.

**Otis BOWEN, Secretary of Health and Human Services, Defendant.**

**No. C 86–20105 RPA.**

United States District Court,
N.D. California.

Nov. 2, 1987.

Charles Greenfield, Brenton Rogozen, Legal Aid Society of Santa Clara County, San Jose, Cal., Gil DeFord, Los Angeles, Cal., for plaintiffs.

George C. Stoll, Asst. U.S. Atty., San Francisco, Cal., for defendant.

## AMENDED ORDER DENYING MOTION FOR RECONSIDERATION AND GRANTING MOTION FOR CLASS CERTIFICATION

AGUILAR, District Judge.

## I. INTRODUCTION:

The Department of Health and Human Services ("HHS") applies special guidelines to applicants for Supplemental Security Income ("SSI") who were born in the Philippines, or whose spouse was born in the Philippines, and who have resided, or whose spouse has resided, in the United States for less than five (5) years at the time of their application for SSI benefits. The Cruzs were injured by the application of these guidelines and have sued raising genuine issues of constitutional law.

After this Court denied defendant's motion for remand on October 14, 1986, finding that the issues presented were predominantly legal, the Appeals Council reconsidered the matter and reversed its legal position. In this motion for reconsideration, the Secretary of HHS, Otis Bowen, argues that the Appeals Council's reversal now makes remand appropriate. In opposing remand, plaintiffs have countered with a motion for class certification, arguing that not only they but a whole class of recent Filipino immigrants are being discriminated against by the Secretary's guidelines. For the reasons explained below, the Court will deny the motion for reconsideration (except with respect to one minor issue), and grant the motion to certify a class.

## II. FACTS:

Born in the Philippines, Leopoldo and Miguela Cruz are now United States citizens. The Cruzs left their native land in September of 1979 and immigrated to California. On September 11, 1979, less than two weeks before they permanently moved from the Philippines, the Cruzs sold at fair market value three parcels of land which they owned in the Philippines to their eight children. The transfer was evidenced by a deed of absolute sale. Although the children failed to properly register the sale with the assessor in the Philippines, the transfer was valid nevertheless.

On March 18, 1980, Leopoldo Cruz applied for SSI benefits on the basis of being over the age of sixty four. In his application, Cruz indicated that he did not own any real property. Mr. Cruz's application was granted.

On June 29, 1984, plaintiff Miguela Cruz applied for SSI benefits on the basis of being over the age of sixty four. As a result of special procedures implemented for the first time in November of 1983, Mrs. Cruz was denied benefits. At approximately the same time, Mr. Cruz's SSI benefits were terminated. In their amended complaint, plaintiffs seek to challenge the new procedures employed by the Secretary to determine their SSI eligibility.

Applicants for SSI must complete a lengthy form providing numerous personal and financial details. Among the information which must be provided to the Secretary is whether the applicant has sold or transferred property within the preceding twenty four months and whether the applicant still owns any real property or houses. If the applicant states that he does not own any resources or real property, generally no further verification is required. Based on the information provided in the entire application, the Secretary determines the applicant's eligibility to receive SSI.

To facilitate eligibility determinations, the Secretary uses an internal set of guide-

lines called the Program Operation's Manual System ("POMS"). POMS § SI 01130.-320.I (hereafter simply "§ 320") pertains to foreign property, i.e., property owned in a foreign country. At the outset, § 320 states that foreign property ownership "is subject to the same rules and limits as domestic property for purposes of determining SSI eligibility." Presumably this means that if an applicant indicates he owns no foreign real property, the Secretary generally will not probe further, just as HHS does not probe further when an applicant states that he owns no real property in the United States. However, effective November 1, 1983, a special procedure has been applied for property in the Philippines.

Section 320(2) applies if (a) the applicant and/or the applicant's spouse was born in the Philippines, and (b) the applicant and/or the applicant's spouse has resided in the United States for less than five years; and (c) the applicant appears otherwise eligible for benefits. Under § 320(2), the HHS examiner is directed to contact the Veterans Administration Regional Office ("VARO") in Manila, the Philippines, and to request a check of property records to determine whether or not the applicant or his/her spouse own any real property. As a rule, VARO contacts only the tax assessor's office when responding to HHS' inquiry.

Based on the information VARO receives from the Philippines tax assessor and relays to HHS, the Secretary determines the applicant's eligibility. Section 320(2) states that the information provided by VARO is "assumed to be correct unless the individual presents evidence that he/she does not own the property." Where contrary evidence is presented, the eligibility examiner is instructed to obtain such further evidence as is necessary to resolve the issue.

Section 320(2) was applied to Mrs. Cruz when she applied for SSI benefits in June 1984 and to Mr. Cruz around that same time period when his ongoing benefits were terminated. All parties now agree that § 320(2) as applied to the Cruzs yielded an incorrect determination. Apparently, the Administrative Law Judge ("ALJ") was not convinced that the Cruzs had transferred their land in the Philippines to their children despite the deed of absolute sale submitted by the Cruzs at their hearing. The children had not registered the deed properly so that it did not appear on the roles of the tax assessor.

Following § 320(2), the ALJ relied on the report of the assessor and found that without recordation the transfer was invalid as a matter of Filipino law. After the ALJ denied SSI benefits to Mrs. Cruz and terminated the benefits of Mr. Cruz, the Appeals Council affirmed the ALJ's decision. The Cruzs then filed this suit challenging the use of the special procedures in the POMs, arguing that § 320(2) violates: (1) the Administrative Procedure Act ("APA") because it was not promulgated according to the proper notice and comment procedure provided in the APA; (2) the Equal Protection Clause of the Fifth Amendment to the United States Constitution because there is no rational basis or substantial government interest supporting the special procedures applied to recent Filipino immigrants; (3) the Due Process Clause of the Fifth Amendment because of the high likelihood of error inherent in the procedures themselves; and (4) the Separation of Powers doctrine because only Congress has the power to authorize disparate treatment based upon national origin.

After this suit was filed, the Secretary asked the Court to remand the ALJ's decision for further hearings. The Court denied the Secretary's motion finding that good cause had not been shown for remand, especially in light of the predominant nature of the legal issues presented.

After this Court denied remand, the Appeals Council sua sponte reconsidered the matter and reversed its position. Now the Secretary is willing to concede the validity of the real property transfer in September 1979. The Cruzs are now receiving benefits and, in light of the Secretary's reversal, retroactive payment is likely for the earlier period when benefits were denied. The Secretary asserts that remand is now appropriate in that plaintiffs have received all that they are entitled to under the law.

Plaintiffs respond that the Secretary is still applying the special procedures of § 320(2) to them. According to plaintiffs, the mere application of those procedures violates equal protection and allows them to raise the other statutory and constitutional issues. Plaintiffs seek class certification in pursuing their claims.

## III. DISCUSSION:

The pivotal issue in this case is whether or not plaintiffs have standing to prosecute their claims. If plaintiffs can establish that they have standing, then they can achieve class certification. If plaintiffs can certify their complaint as a class action, then nothing that the Secretary does or does not do with respect to the Cruzs alone can render moot the claims of the class. As the analysis that follows will demonstrate, plaintiffs do have standing and class certification is appropriate.

### (A) *Standing:*

■ The concept of standing derives from the "case or controversy" requirement of Article III of the Constitution. Although recent cases have suggested that the limitations of standing relate to curbing federal judicial power vis-a-vis states' rights, *see, e.g., Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556, *reh'g. denied,* 468 U.S. 1250, 105 S.Ct. 52, 82 L.Ed.2d 942 (1984) ("The case-or-controversy doctrines state fundamental limits on federal judicial power in our system of government."), the requirement of standing has a "core component derived directly from the Constitution." *Id.* at 751, 104 S.Ct. at 3324. Historically, courts have interpreted this "core component" fairly literally by viewing the "case or controversy" requirement of standing as limiting federal jurisdiction to those cases in which an adversarial setting is guaranteed by the parties' "personal stake" in the outcome of the litigation. *LaDuke v. Nelson,* 762 F.2d 1318, 1322–23 (9th Cir.1985), *quoting Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Hence, in *Heckler v. Mathews,* 465 U.S. 728, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984), Justice

Brennan wrote for a unanimous Court that in order to establish standing:

> [A] plaintiff "must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," [citation omitted] and that the injury "is likely to be redressed by a favorable decision." [citation omitted]

Applying the standard and reasoning set forth in *Heckler,* this Court finds that plaintiffs have standing to bring their claims. The Secretary argues that plaintiffs do not have standing because the Appeals Council's "about face" recognizes the validity of the land transfer that occurred in 1979. Thus, the Cruzs have overcome the presumption of the tax assessor's statement and are not denied benefits by § 320(2). According to the Secretary, then, the Cruzs have no injury which a decision of this Court could redress. Another way to articulate this argument is to assert that the matter is moot, i.e., the plaintiffs lack a legally cognizable interest in the outcome of a challenge to § 320(2). In this sense, mootness "is but a reflection of the Article III requirements of direct injury and a 'personal stake' in the outcome." *Sample v. Johnson,* 771 F.2d 1335, 1339 (9th Cir. 1985), *cert. denied,* 475 U.S. 1019, 106 S.Ct. 1206, 89 L.Ed.2d 319 (1986), *quoting Warth,* 422 U.S. at 498, 95 S.Ct. at 2205.

If in fact the only injury suffered by the Cruzs was the denial of benefits properly due them, then plaintiffs might not have standing. However, plaintiffs also claim injury in the denial of the equal application of the law. Like the plaintiffs in *Heckler,* plaintiffs are not asserting merely a substantive right to a particular amount of benefits, but rather they assert their right to receive "benefits distributed according to classifications which do not without sufficient justification differentiate among covered applicants solely on the basis" of national origin and duration of residency in the United States. *Heckler,* 465 U.S. at 737, 104 S.Ct. at 1394, *quoting Weinberger v. Wiesenfeld,* 420 U.S. 636, 647, 95 S.Ct. 1225, 1233, 43 L.Ed.2d 514 (1975). This type of personal injury is "long recognized as judicially cognizable." *Heckler,* 465

U.S. at 738, 104 S.Ct. at 1394 [citations omitted].

The Supreme Court's ruling in *Heckler* also deflates the Secretary's arguments with respect to this Court's supposed inability to provide redress in this case. In *Heckler*, a husband and wife challenged amendments made to the Social Security Act (the "Act") which created an offset provision that applied differently to nondependent men as against nondependent women. The amendments to the Act also included a severability clause which provided that if the exception to the pension offset for nondependent men was found unconstitutional, the offset would not be struck but rather the exception would be jettisoned. In other words, if it was found unconstitutional, the exception would not be broadened to include women; instead it would be abolished completely.

For Mr. Mathews who challenged the offset, the severability clause meant that even if he won his case and the exception was found unconstitutional, the benefits he received would not change. Despite this fact, the Court found that Mathews did have standing because "the right to equal treatment guaranteed by the Constitution is not coextensive with any substantive rights to the benefits denied the party discriminated against." 465 U.S. at 739, 104 S.Ct. at 1395. The fact of discrimination itself gives rise to noneconomic but nevertheless cognizable injuries. *Id.* Harkening back to the words of the late Justice Brandeis, the Court explained:

> [W]hen the "right invoked is that to equal treatment," the appropriate remedy is a *mandate* of equal treatment, a result that can be accomplished by withdrawl of benefits from the favored class as well as by extension of benefits to the excluded class. [emphasis by Court]

465 U.S. at 740, 104 S.Ct. at 1395, *quoting Iowa–Des Moines Nat'l Bank v. Bennett*, 284 U.S. 239, 247, 52 S.Ct. 133, 136, 76 L.Ed. 265 (1931).

The applicability of *Heckler* to the facts of this case is clear. Plaintiffs have alleged a violation of their right to the equal application of the laws. Even though the Appeals Council's reversal of position likely renders moot the issue of actual benefits, it remains the case that the discriminatory guidelines of § 320(2) have been applied to the Cruzs and have been and will be applied to thousands of newly arriving Filipinos. Accordingly, plaintiffs have suffered a cognizable injury which a decision by this Court could remedy and, therefore, the Cruzs have standing to pursue this lawsuit.

### (B) *Class Certification—Rule 23(a):*

■ Once plaintiffs' standing to sue is recognized, it is a short step to the granting of their application for status as a class. Rule 23 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") annunciates the standards for the certification of a class. As a prerequisite to any class action, plaintiffs have the burden of demonstrating that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. The Court will address these prerequisites seriatim.

(1) *Numerosity:* The exact size of the class is unknown but general knowledge and common sense indicate that it is large. Answers to plaintiffs' interrogatories suggest that the class numbers in the tens of thousands. Furthermore, unnamed and unknowable future members will be part of the class and their joinder at this time is impracticable. All of these facts support the finding that the numerosity requirement has been met. *See, e.g., International Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 102 F.R.D. 457 (N.D.Cal.1983); *Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D.Cal.1986).

(2) *Commonality:* To satisfy the commonality requirement plaintiffs must demonstrate that there are questions of law or fact common to the class. The equal protection claim raised by plaintiffs is common to all class members. The Secretary's

"common course of conduct" in which all class members are discriminated against satisfies the standards of Rule 23(a). *See In Re Unioil Securities Litigation,* 107 F.R.D. 615, 619 (C.D.Cal.1985).

(3) *Typicality:* The Supreme Court has found that the commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen. Telephone Co. of S.W. v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982). In *Falcon,* the Court stated that both requirements:

> [S]erve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

*Id.*

The application of § 320(2) to the class is a practice or course of administrative conduct that is common to the entire class. Moreover, claims brought by class members individually would fall in the same categories of legal theory advanced by plaintiffs here. Because the claims involved are not only interrelated but identical to those that would be brought by other class members, the interests of efficiency and economy are served by class certification and the typicality requirement is satisfied.

(4) *Adequacy of Representation:* In the Ninth Circuit, adequacy of representation has been found to depend on (a) the qualifications of counsel for the representatives, (b) an absence of antagonism between the representatives and the class and among the representatives themselves, and (c) the unlikelihood that the suit is collusive. *In Re N. Dist. of Cal. Dalkon Shield IUD Products Liability Litigation,* 693 F.2d 847, 855 (9th Cir.1982), *cert. denied,* 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983).

Based on reputation and the quality of the work submitted to the Court in this case, it is abundantly clear that plaintiffs' counsel is fully qualified to prosecute this case. In addition, their is no antagonism between the interests of the Cruzs and other class members, and an obvious sharing of interests between Mr. and Mrs. Cruz. Furthermore, there is no basis to suspect any collusion in the filing and pursuit of these claims. Thus the requirement of adequate and fair representation is satisfied, as are the other requirements of numerosity, commonality, and typicality.

(C) *Class Certification—Rule 23(b)(2):*

With plaintiffs having met the prerequisites of Rule 23(a), Rule 23(b)(2) permits the maintenance of a class action if:

> [T]he party opposing the class has acted or refused to act on grounds generally applicable to the class thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

The application of § 320(2) across the class of those born in the Philippines who have been in the United States for less than five years (and their spouses similarly situated) is an action which may be unconstitutional and therefore warrant declaratory relief for the class as a whole. In fact, that is part of the relief requested by the plaintiffs. Thus, the standard of Rule 23(b)(2) is met.

In light of the foregoing discussion, the Court finds that plaintiffs Leopoldo and Miguela Cruz have satisfied the requirements of Rule 23(a) and (b)(2). Good cause appearing therefor, the Court hereby certifies the following class:

> All past, present, and future applicants for and recipients of Supplemental Security Income (SSI) benefits, as authorized by 42 U.S.C. § 1381 *et seq.,* who were born in the Philippines, or whose spouse was born in the Philippines, either of whom have resided or will reside in the United States for less than five (5) years at the time of an application for SSI benefits.

(D) *Remand:*

The Court hereby DENIES defendant's motion for reconsideration as it relates to

the matter discussed above. There is one unrelated matter, however, which the Court will remand. The Secretary has raised a question about the bank account holdings of the plaintiffs between the dates of August 1, 1982, and December 1, 1984. Plaintiffs do not contest the fact that they are not eligible for SSI benefits during those months in which their bank holdings exceeded the resource levels set out in the applicable regulations. Because this determination bears no relation to the underlying constitutional claims in this case, and recalculation of the bank account assessment is in order, the Court finds good cause to remand to the Secretary only that part of the case that relates to the recalculation of the plaintiff's bank account holdings.

### IV. CONCLUSION:

Good cause appearing therefor, the Court GRANTS the motion to remand only to recalculate the bank holdings of the plaintiffs during the period between August 1, 1982 and December 1, 1984. In all other respects, the motion for reconsideration of the order denying remand is DENIED.

IT IS SO ORDERED.