**Edward Eugene PENN,
Petitioner–Appellant,**

v.

**ATTORNEY GENERAL OF THE STATE OF ALABAMA, John E. Nagle, Respondents–Appellees.**

**No. 90–7078.**

United States Court of Appeals, Eleventh Circuit.

May 6, 1991.

---

L. Dan Turberville, James M. Wooten, Turberville & Maxwell, Birmingham, Ala., for petitioner-appellant.

Don Siegelman, Atty. Gen., Andy Scott Poole, Asst. Atty. Gen., Montgomery, Ala., for respondents-appellees.

Before CLARK and BIRCH, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

Edward Penn appeals the judgment of the United States District Court for the Northern District of Alabama denying his 28 U.S.C. § 2254 petition for habeas corpus relief. He alleged that he was denied equal protection of the law because the Circuit Court of Jefferson County, Alabama, used convictions obtained under an unconstitutional juvenile statute to sentence him as an habitual felony offender to life in prison with no chance of parole. Even if the challenged code section was unconstitutional as contended by Penn, he would still have been tried as an adult in accordance with the general law of Alabama in force at that time. Therefore, we affirm the judgment of the district court.

Penn was sentenced to life in prison without parol in 1985 under the Alabama Habitual Felony Offender Act because he had committed three prior felony offenses.[1] Two of the three convictions used to enhance his present sentence occurred when he was under eighteen years of age. These convictions were treated as adult convictions. Penn claims and the State of Alabama essentially concedes that a stat-

---

1. The pertinent portion of the Habitual Felony Offender Act provides:

    (c) In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony, he must be punished as follows:

    . . . .

    (3) On conviction of Class A felony, he must be punished by imprisonment for life without parole.

    Ala.Code § 13A–5–9(c)(3) (1975).

ute applicable only to residents of Jefferson County, concerning criminal prosecutions of juveniles denied him equal protection of the law because of his gender. Penn was sixteen in 1969 when he was tried and convicted as an adult for burglary, a felony. In 1970, he was seventeen when he was tried and convicted as an adult for grand larceny, also a felony. Both convictions were obtained in the Circuit Court of Jefferson County.

On September 10, 1985, Penn was found guilty of robbery in the first degree in the Circuit Court of Jefferson County, Alabama. At the sentencing hearing the state introduced evidence that Penn had three prior felony convictions, which, under the terms of the Habitual Felony Offender Act, required mandatory imposition of a sentence of life in the penitentiary without parole.[2] The three felony convictions used to enhance his sentence consisted of the burglary offense on June 5, 1969, the grand larceny conviction on February 18, 1970, and another conviction in 1983 for possession of a forged instrument. Penn was born on August 15, 1952.

Penn argues that Title 62 section 311 of the *Code of Alabama* (1940, Recompiled 1958) which dealt with the jurisdiction to try juvenile offenders only in Jefferson County, Alabama was unconstitutional as violative of the equal protection clause because it singled out males for different treatment than females. Under the terms of this statute males between the ages of sixteen and eighteen years of age were tried as adults in the Circuit Court of Jefferson County, while young women under the age of eighteen years of age were under the exclusive jurisdiction of the juvenile court. As a result, he maintains, the two convictions are invalid and the state court should not have been able to use these convictions to enhance his current sentence.

Penn does not challenge the underlying criminal laws he was charged with violating in 1969 and 1970. Nor, is he attacking the validity of the Alabama Habitual Felony Offender Act. He is only concerned

with the constitutionality of the jurisdictional language of the Jefferson County juvenile code and its effect on his convictions as an adult in 1969 and 1970.

The magistrate, after determining that the issue was properly before the court, agreed with Penn that the Jefferson County juvenile code violated the constitutional guarantee of equal protection. However, the magistrate then considered what would have happened if the law had been challenged in 1969 or 1970. He concluded that if Title 62, section 311, *Code of Alabama* (1940, Recompiled 1958) was struck down as violative of the equal protection clause, then Penn would have been tried as an adult under Title 13, sections 350 and 363, *Code of Alabama* (1940, Recompiled 1958) which applied to the entire state of Alabama except Jefferson County. Under this title all children *under* the age of sixteen were treated as juveniles. However, those youths between the ages of sixteen and eighteen were under the exclusive jurisdiction of the courts of general jurisdiction *unless* the court exercised its discretion to transfer the case to juvenile court. Therefore, the magistrate was of the opinion that since Penn was sixteen or older in 1969 and 1970 he suffered no prejudice and that the convictions obtained in Jefferson County could be used to enhance his sentence under the Habitual Felony Offenders Act. The district court adopted the recommendations of the magistrate.

■ We agree with the district court and the state that Penn's 1969 and 1970 convictions were properly used to enhance his sentence under Alabama's Habitual Felony Offender Act. By simply holding that Title 62, section 311 deprived Penn of his right to equal protection of the law does not mean that those convictions as an adult were not valid and set aside for enhancement purposes. In these circumstances it makes little difference whether the jurisdiction to try Penn as a juvenile in Jefferson County was constitutional. If the jurisdictional language of the Jefferson County statute was unconstitutional, then the

---

**2.** Robbery in the first degree is a Class A felony.

*See* note 1, *supra.*

court is still faced with the question of the proper remedy available to the petitioner. In the past the Supreme Court has voided convictions imposed under habitual offender statutes because some of the convictions used for enhancement purposes were obtained when the defendant was not represented by counsel.[3] These decisions focused on the validity of the trial itself. Because of these prior uncounseled convictions the Court ordered a new sentencing hearing for reconsideration of the defendant's sentence in light of the prior invalid sentences. The Court reasoned that it would be impossible to speculate what sentence the trial court would impose if the court was precluded from taking into consideration the invalid convictions. In other cases, where the underlying criminal law was declared unconstitutional, the conviction did not redress any legal wrong. "An unconstitutional law is void, and is as no law. An offense created by it is no crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment." *Ex Parte Siebold*, 100 U.S. 371, 376–377, 25 L.Ed. 717 (1879). Neither of these scenarios fits the mold of the case before us. In situations more analogous to the facts here, if a law is held violative of the fourteenth amendment's guarantee of equal protection, the remedy has been to either extend the privileges to the unprotected class or "declare it a nullity and order that its benefits not extend to the class that the legislature intended to benefit." *Welsh v. United States*, 398 U.S. 333, 361, 90 S.Ct. 1792, 1807–08, 26 L.Ed.2d 308, 331 (1970) (Harlan, J., concurring) (citations omitted); *see also California Federal Savings and Loan Assoc. v. Guerra*, 479 U.S. 272, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987). In this case if we held that the Jefferson County juvenile statute was unconstitutional for jurisdictional reasons, we would have to declare it a nullity because to extend its benefits to Penn would create a conflict with the state-wide statute and still violate equal protection. Likewise, to extend section 311 to all juveniles in the state would

also violate equal protection. Assuming, for the sake of argument, that the code section in question was violative of equal protection our conclusion would be the same. As a matter of law Penn would have been tried as an adult under sections 350 and 363 of Title 13. Also, under our analysis, it does not matter whether the jurisdictional language of the Jefferson County code was declared unconstitutional because Penn suffered no constitutional harm. Therefore, he has no standing to challenge the constitutionality of section 311. *Clements v. Fashing*, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508, *reh'g. denied*, 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1404 (1982). The only difference between section 350 and section 311 is that under section 311 female delinquents between the ages of sixteen and eighteen years of age were under the exclusive jurisdiction of the Jefferson County juvenile court system.

The jurisdictional language in Title 13, sections 350 and 363 make it clear that the legislature intended that the juvenile court have exclusive jurisdiction over *all* delinquent children under the age of sixteen in all of Alabama except Jefferson county. Title 13, § 350 and § 363 *Code of Alabama* (1940, Recompiled 1958). The same is true for Title 62, section 311, the only difference being that, in addition, the juvenile court retained exclusive jurisdiction over females under the age of eighteen. Title 62, section 311 of the *Code of Alabama* (1940, Recompiled 1958), since repealed by the 1975 code of Alabama, reads in pertinent part:

> 'delinquent child' shall mean any male child who while under sixteen years of age, *or any female child who while under eighteen years of age*, being or residing in such county, violates any penal law of the United States or of this state, or any regulation, ordinance or law of any city, town, or municipality of such county; or who commits any offense or act for which he or she could be prosecuted in a method partaking of the na-

3. *See United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592, 596 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

ture of a criminal action or proceeding; or who is beyond the control of his or her parent, parents, guardian or custodian, or who defies their authority, or who is otherwise incorrigible; or who is guilty of immoral conduct; or who is leading, or from any cause is in danger of leading an idle, dissolute, lewd or immoral life, or who is found in any place, for permitting which, an adult may be punished by law; *or a male child between the ages of sixteen and eighteen years of age,* who has been brought before any other court, charged with a crime, and which court has by proper order transferred said child to the said juvenile and domestic relations court to be dealt with under the terms of this subdivision.

*Id.* (Emphasis added).

As can be seen, the Jefferson County law also contained language, which gave the local criminal court jurisdiction over male delinquents between the ages of sixteen and eighteen years, unless the court in its discretion saw fit to transfer the case to juvenile court. The section of the code dealing with juveniles for the rest of the state defined a delinquent child as *any* child under sixteen years of age who violates any penal law.[4] Section 350 does not address the question of jurisdiction over delinquents between the ages of sixteen

and eighteen. That language is contained in section 363 of Title 13.

Title 13, section 363 entitled "Transferring jurisdiction; transfer to the juvenile court" states that any criminal court which has before it a "child between the ages of sixteen and eighteen," has the discretion to "transfer such child ... to the jurisdiction of the juvenile court."[5] *Id.* This is the same option available to the Jefferson County courts in transferring a male child, between the ages of sixteen and eighteen years of age, to the juvenile court. The jurisdictional section of section 311 allows a court of criminal jurisdiction to transfer:

[A] male child between the ages of sixteen and eighteen years of age, who has been brought before any other court, charged with a crime, and which court has by proper order transferred said child to the said juvenile and domestic relations court to be dealt with under the terms of this subdivision.

Title 62, § 311 *Code of Alabama*, (1940, Recompiled 1958).

The courts of general jurisdiction had exclusive jurisdiction over male juveniles between sixteen and eighteen in section 311 and all juveniles between those ages in section 363 unless the court exercised its discretion to transfer the case to juvenile

---

4. Title 13, § 350(3) *Code of Alabama* (1940, Recompiled 1958) in pertinent part reads:

The words 'delinquent child' shall mean any child who while under sixteen years of age violates any penal law of the United States or of this state, or any regulation, ordinance or law of any city, town or municipality, or who commits any offense or act for which an adult could be prosecuted in a method partaking of the nature of a criminal action or proceeding; or who is beyond the control of his parent, parents, guardian, or custodian, or who is otherwise incorrigible, or who is guilty of immoral conduct, or who is leading an idle, dissolute, lewd or immoral life; or who engages in any calling, occupation or exhibition punishable by law or is found in any place for permitting which an adult may be punished by law.

*Id.*

5. Title 13, § 363 *Code of Alabama* (1940, Recompiled 1958) in pertinent part reads:

Nothing in this chapter shall be construed as forbidding the arrest, with or without war-

rant, of any child as is now or may hereafter be provided by law, or as forbidding the issuance of warrants by magistrates as provided by law. Whenever a child under sixteen years of age is brought before a magistrate of any court in the county other than the juvenile court, charged with any offense, such magistrate or court shall forthwith, by proper order, transfer the case to the juvenile court of the county. Any criminal court or any court exercising criminal jurisdiction in any county coming under the provisions of this chapter before which any child between the ages of sixteen and eighteen years is brought, charged with the commission of a crime, shall have the authority, if such court shall deem it to be in the interest of justice and of the public welfare, to in like manner transfer such child by proper order to the jurisdiction of the juvenile court of said county to be dealt with as a delinquent child under the terms of this chapter and when so transferred such child shall come under all terms and conditions of this chapter.

*Id.*

court. As far as the exercise of that discretion is concerned, we can find no cases or statute that give any guidance that limits the judge's discretion. If the benefits of the "under eighteen years of age" provisions of section 311 could not have been extended to include Penn as we have held, the only alternative was to try him under sections 350 and 363. It is obvious to us that the Jefferson County courts in 1969 and 1970 declined to exercise their discretion to transfer the cases to the juvenile court and proceeded to try him as an adult, the same result that would have been obtained if he had been tried under sections 350 and 363.

■ Therefore, despite the fact that certain portions of the jurisdictional language of the Jefferson County juvenile code may have been violative of the guarantee of equal protection, Penn suffered no constitutional harm. There existed a privilege to have his case transferred to the juvenile court. However, that option was *only* a privilege, there was *no* constitutional or statutory right for a youth between sixteen and eighteen years old to be tried as a juvenile. Accordingly, the judgment of the district court is hereby

AFFIRMED.

CLARK, Circuit Judge, dissenting:

## I. BACKGROUND

The facts in this case are uncontroverted. In 1969, appellant-petitioner Edward Eugene Penn pled guilty to burglary and received a jail sentence. He was 16 years old. In 1970, he pled guilty to grand larceny and received a jail sentence. He was then 17 years old. Penn has one other prior felony conviction. In 1985, Penn was convicted of robbery and was sentenced to life without parole as a habitual offender. Had the state sentencing court not considered his 1969 and 1970 convictions, he

would have been eligible for parole in 10 years.

Penn has challenged the enhancement of his 1985 sentence for the reason that his convictions in 1969 and 1970 violated the equal protection clause of the Fourteenth Amendment. He claims that an Alabama statute that was in effect in 1969 and 1970 irrationally discriminated between males and females in its definition of juvenile status.[1] This statute, which was applicable only to Jefferson County, Alabama (the county encompassing Birmingham and in which all of Penn's convictions were entered), mandated that female delinquents would be treated as juveniles until they reached the age of 18, whereas male delinquents would only be treated as juveniles until the age of 16. In all of the other counties in the state, both males and females were treated as juveniles only until they reached 16. The exception for Jefferson County females was abolished in 1975.

Penn filed a habeas petition in federal district court on February 21, 1989. The district court determined that Penn's convictions in 1969 and 1970 as an adult offender violated the equal protection clause, in that a similarly situated woman would have been convicted as a juvenile offender. The district court then denied habeas relief on the ground that, had the equal protection claim been adjudicated at the time of Penn's convictions in 1969 and 1970, the court would have had no choice but to declare the statute unconstitutional and therefore nullify it completely (as opposed to extending the statute's benefits to the excluded classes).

## II. EXTENSION OR NULLIFICATION

The district court was certainly correct to find that Penn's 1969 and 1970 convictions violated the equal protection clause.[2] Just as certainly, the district court erred in

1. Tit. 62, § 311, Code of Alabama (1940, recompiled 1952).

2. *See, e.g., Lamb v. Brown,* 456 F.2d 18, 20 (10th Cir.1972) ("Because the purpose of the disparity in the age classification between 16–18 year old males and 16–18 year old females has not been

demonstrated, we hold that [the statute creating the disparate treatment] is violative of the equal protection clause."); *Raiford v. State,* 296 Md. 289, 462 A.2d 1192 (1983) (extending statewide statute establishing 18 as the limit for juvenile status to Baltimore).

refusing to grant relief. The district court should have found that the benefits of the statute would have been extended to all defendants between the ages of 16 and 18. At a minimum, Penn's current sentence cannot be allowed to stand because of its unconstitutional component.

## A. The Requirement of a Concrete Remedy

This court's precedents conclusively show that Penn cannot be allowed to go remediless. In *Cox v. Schweiker*,[3] we held:

> When a statute conferring benefits on a certain class of persons is held unconstitutional due to a violation of the equal protection clause, then the unlawful discrimination or classification must be eradicated, either by granting the benefits to the inappropriately excluded class, or by denying them to the class theretofore benefitted unlawfully. *In such cases where a sovereign has intentionally conferred some type of benefit upon one group and thereby unconstitutionally deprived another, the normal judicial remedy is to extend the benefits to the deprived group.* Otherwise, the result is an imposition of hardship on a number of persons whom the legislature intended to protect.[4]

The "normal judicial remedy" should be applied in this case as well.

Our decision in *Cox* was informed by a line of Supreme Court cases that discuss the means by which courts are to determine whether an unconstitutional statute is to be nullified or extended. Justice Harlan's concurrence in *Welsh v. United States*[5] is the seminal authority in this area of law. All nine members of the Supreme Court adopted Justice Harlan's basic remedial formulation in *Califano v. Westcott*.[6] In *Welsh*, the Supreme Court overturned Welsh's criminal conviction for draft evasion and ruled that "deeply held moral, ethical, or religious beliefs"[7] entitled Welsh to conscientious objector status. Justice Harlan concurred to explain his views on the proper remedy, among other things. He wrote:

> The appropriate disposition of this case . . . is determined by the fact that at the time of Welsh's induction notice and prosecution the Selective Service was, as required by statute, exempting individuals whose beliefs were identical in all respects to those held by petitioner except that they derived from a religious source. Since this created a religious benefit not accorded to petitioner, it is clear to me that this conviction must be reversed under the Establishment Clause of the First Amendment unless Welsh is to go remediless.[8]

Justice Harlan also stated that, because Welsh's challenge to the statute involved a criminal conviction, the statute's extension was "mandated by the Constitution."[9] Justice Harlan's concurrence thus indicates that classifications such as those formulated by the statute at issue here create concrete injuries that require concrete remedies.[10]

---

3. 684 F.2d 310 (5th Cir. Unit B 1982).

4. *Id.* at 317 (emphasis added and citations omitted).

5. 398 U.S. 333, 344, 90 S.Ct. 1792, 1798, 26 L.Ed.2d 308 (1970) (Harlan, J., concurring).

6. 443 U.S. 76, 89, 94, 99 S.Ct. 2655, 2663, 2666, 61 L.Ed.2d 382 (1979).

7. 398 U.S. at 344, 90 S.Ct. at 1798.

8. 398 U.S. at 362, 90 S.Ct. at 1808 (citations and footnote omitted).

9. 398 U.S. at 363, 90 S.Ct. at 1809.

10. *See also* Miller, *Constitutional Remedies for Underinclusive Statutes: A Critical Appraisal of* Heckler v. Mathews, 20 Harv.C.R.–C.L.L.Rev. 79 (1985):

> In *Welsh*, the unconstitutionality of Welsh's injury plainly could have been remedied by nullifying the exemption granted to religious objectors. As Justice White pointed out in dissent, Welsh had no constitutional claim to exemption independent of the fact that it had been granted to others. Nevertheless, nullification was inadequate as a constitutional remedy. The reason, for Justice Harlan and implicitly for Justice White, was that while nullification would correct the unconstitutionality of the statutory exemption scheme, it would not touch the injury suffered by Welsh—the conviction for refusing induction and the corresponding prison sentence.
>
> *Id.* at 115 (footnote omitted).

Even in non-criminal cases, the Supreme Court has recognized that the harm of an equal protection violation may require more than rectification of the inequality. In *Iowa–Des Moines Nat'l Bank v. Bennett*,[11] the Court struck on equal protection grounds a state bank tax that favored certain institutions over others. As to the remedy, Justice Brandeis held:

> The right invoked is that to equal treatment; and such treatment will be attained if either [the petitioning banks'] competitors' taxes are increased or their own reduced. But it is well settled that a taxpayer who has been subjected to discriminatory taxation through the favoring of others in violation of federal law cannot be required himself to assume the burden of seeking an increase of the taxes which the others should have paid. Nor may he be remitted to the necessity of awaiting such action by the state officials upon their own initiative.
>
> The petitioners are entitled to obtain in these suits refund of the excess of taxes exacted from them.[12]

Although writing in the context of taxation, Justice Brandeis clearly expressed a preference for tangible relief to litigants subjected to discriminatory laws. Applying Brandeis' reasoning to this case, our court should refuse to lower the age of criminal majority (raise the tax rate) but instead should require that all defendants be subject to the same age of criminal majority (tax rate) as the favored group.

### B. *The Issue of Legislative Intent*

The most recent Supreme Court pronouncement on this question indicates that courts "must look to the intent of the state legislature to determine whether to extend benefits or nullify the statute."[13] But where the legislature has not indicated its intent through a severability clause, it is almost impossible to determine the contingent intent of the legislature. As Justice Harlan noted in *Welsh*, nullifying a statute goes against legislative intent as much as extending statutory benefits; nullification requires that a statute's "benefits not extend to the class that the legislature intended to benefit."[14]

In this case, we have little evidence as to what the Alabama legislature would have intended had the statute at issue been declared unconstitutional at the time of Penn's convictions in 1969 and 1970. The legislature later abolished the distinction created by the statute and established 16 as the statewide age of criminal majority for both sexes.[15] The district court's decision seems to have turned on the assumption that the legislature of Alabama intended for most persons over the age of 15 to be treated as adults and only wanted to protect the relatively few females in Jefferson County who fell between the ages of 16 and 18. The district court then attempted to approximate this legislative decision as best as possible by applying the lower age of criminal majority across the board. But for all we know, females in Jefferson County between the ages of 16 and 18 could have constituted the majority of persons in the state of Alabama in that age range. (Jefferson County encompasses Birmingham, Alabama's largest city.) We also have no way of weighing the legislature's intensity of preference. The state legisla-

---

11. 284 U.S. 239, 52 S.Ct. 133, 76 L.Ed. 265 (1931).

12. 284 U.S. at 247, 52 S.Ct. at 136 (citations omitted).

13. *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 292 n. 31, 107 S.Ct. 683, 695 n. 31, 93 L.Ed.2d 613 (1987).

14. *Welsh*, 398 U.S. at 361, 90 S.Ct. at 1808; *see also Westcott*, 443 U.S. at 90, 99 S.Ct. at 2664 ("[A]n injunction suspending the program's operation would impose hardship on beneficiaries whom Congress plainly meant to protect."); *Kalina v. Railroad Retirement Bd.*, 541 F.2d 1204, 1210 (6th Cir.1976) (invalidating gender-based disparate treatment of spouses of railroad employees; "the Board suggests that we should hold that all spouses, female as well as male, of railroad employees must prove that they are dependent in fact in order to qualify for a spouse's annuity. This result would be contrary to the considered decision of Congress that spouses of male railroad workers are to be conclusively presumed dependent."), *aff'd*, 431 U.S. 909, 97 S.Ct. 2164, 53 L.Ed.2d 220 (1977).

15. Ala.Code § 12–15–1(3) (1975).

ture may have felt extremely strongly that females in Jefferson County should be treated as juveniles until reaching the age of 18 and may have been indifferent as to the treatment of all others in the state between the ages of 16 and 18. Given our lack of information as to the true intent of the legislature, the wisest approach would be to extend the statute. This approach is the only way to be sure we are at least protecting those citizens we are *certain* the Alabama legislature meant to protect.[16]

Perhaps more importantly, the Supreme Court in *Skinner v. Oklahoma*[17] refused even to speculate as to whether nullification or extension of Oklahoma's habitual offender sterilization statute would be appropriate and simply reversed the petitioner's conviction on equal protection grounds: "We have ... a situation where the Act as construed and applied to petitioner is allowed to perpetuate the discrimination which we have found to be fatal."[18] The Court reasoned that, despite the presence of a severability clause, the question of whether to extend or nullify the statute was "more appropriately left for adjudication by the Oklahoma court."[19] We are faced with an exactly analogous situation in the instant case: Penn's convictions were entered in violation of the equal protection clause, we have even less information than the Supreme Court in *Skinner* had as to the legislature's intent in the event of the unconstitutionality of the statute, and we should therefore at a minimum reverse Penn's present sentence, which is based on the prior, unconstitutional convictions.

### C. *Policy Considerations*

Policy reasons also indicate that the benefits of the statute should be retroactively extended to all defendants in the state of Alabama. The statutory scheme in ques-

tion is no longer in effect. The consequences of declaring a superseded statute unconstitutional are minimal. There is little possibility of disrupting Alabama's current administration of its criminal justice system, of requiring large expenditures of funds to right the inequality, or even of causing friction between state legislative leaders and the federal courts. The only consequence is that those who are currently incarcerated on sentences that stem at least in part[20] from convictions entered against them in Alabama while they were between the ages of 16 and 18 and who were not females in Jefferson County may be eligible for resentencing proceedings.

### III.  PRESENT RELEVANCE OF PRIOR CONVICTIONS

Penn's requested relief should be granted on the alternate ground that the Supreme Court has indicated that it is the *present* effect of Penn's prior, unconstitutional convictions that must be remedied, regardless of whether Penn would have been ultimately successful had he sought relief in 1969 or 1970. The Court has reversed criminal sentences that have been enhanced by prior, unconstitutional convictions without taking heed of whether the defendant would have escaped punishment under the prior convictions, had his rights been secured in the earlier proceedings. In the context of a federal enhanced sentence in *United States v. Tucker*,[21] the Court declared:

> We need not speculate about whether the outcome of the respondent's 1938 and 1946 prosecutions would necessarily have been different if he had had the help of a lawyer. Such speculation is not only fruitless, but quite beside the point. For the real question here is not whether the results of the Florida and Louisiana pro-

---

**16.** *See Cox,* 684 F.2d at 317 ("Otherwise the result is an imposition of hardship on a number of persons whom the legislature intended to protect." (citation omitted)).

**17.** 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

**18.** 316 U.S. at 543, 62 S.Ct. at 1114.

**19.** *Id.* (citation omitted).

**20.** *See generally Maleng v. Cook,* 490 U.S. 488, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989).

**21.** 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).

ceedings might have been different if the respondent had had counsel, but whether the sentence in the 1953 federal case might have been different if the sentencing judge had known that at least two of the respondent's previous convictions had been unconstitutionally obtained.[22]

Applying the words of *Tucker* to the facts of this case, we have: "The real question here is not whether the results of the 1969 and 1970 prosecutions might have been different if the age-differentiation statute had been found unconstitutional at that time, but whether the sentence in the 1985 conviction might have been different if the sentencing judge had known that at least two of the respondent's previous convictions had been unconstitutionally obtained." The *Tucker* Court looked only to the present effect of the unconstitutional action, not to hypothetical past effects. The Court in *Tucker* was willing to overturn Tucker's conviction even though the lack of counsel may well have been harmless error. Analogously, even assuming that the statute at issue would have been nullified and not extended if it had been challenged at the time of Penn's prior convictions, Penn's prior convictions as an adult were all the same entered in violation of the equal protection clause, and his present sentence was unconstitutionally enhanced.[23]

## IV. CONCLUSION

Penn is suffering severely from a violation of his rights to equal protection. He has been sentenced to life in prison without parole on the basis of prior convictions that were unconstitutionally entered against him. This court should follow the Supreme Court's decisions in *Skinner* and *Tucker* and grant the writ of habeas corpus. Any other course of action leaves Penn remediless.

---

**22.** 404 U.S. at 447–48, 92 S.Ct. at 592 (footnotes -omitted).

**23.** *See generally United States v. Addonizio,* 442 U.S. 178, 187, 99 S.Ct. 2235, 2241, 60 L.Ed.2d 805 (1979) (emphasizing that challenge to enhanced sentence must rest on "misinformation of constitutional magnitude").