**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 23, 2010[*]
Decided October 5, 2010

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 07-2974

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee*,

*v.*

AARON PATTERSON,
    *Defendant-Appellant*.

Appeal from the United States District
Court for the Northern District of Illinois,
Eastern Division.

No. 04 CR 705-1

Rebecca R. Pallmeyer,
*Judge*.

**O R D E R**

After spending more than a decade on death row, Aaron Patterson was pardoned by then-Governor George Ryan and freed from prison. Once out he pledged his time to exposing corruption and police misconduct, styling himself as a crusader for criminal-justice reform. A year later, in 2004, he was ensnared by a federal sting operation and indicted for trading in guns and drugs. His case proceeded to trial, where Patterson's angry

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Accordingly, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

outbursts before a spectator-packed courtroom made it nearly impossible for the court to carry on proceedings. In this appeal Patterson challenges the fairness of his trial, taking aim at several rulings relating to the status of his representation and the court's overall management of the trial. We affirm the judgment.

Patterson first clashed with the district court over the timing of the start of his trial. The court had originally scheduled the trial for February 2005, but pushed that date back to May after Patterson sought a continuance. Then, two weeks before trial, Patterson sought a second continuance or, alternatively, leave to have lead counsel Demitrus Evans withdraw from the case. The hearing on this request turned confrontational when Patterson disagreed with the court about an evidentiary issue. "You're going to have to run me out of this courtroom if you're not going to listen to me," he warned. Later, when the court explained why it could not delay the trial past July, Patterson retorted, "I won't be here. Why don't you just get off the case . . . if you're that busy . . . just get off the case." The next day the court agreed to move the trial back a week, to June 6. Patterson was not satisfied: "We're not doing no trial your honor on June 6." Patterson continued to speak out of turn until the court ordered him removed from the courtroom.

The defense prevailed on the court to move the trial back until July 5, but on the morning of June 30, with jury selection set to begin, Patterson's lawyers moved for a third continuance. They asserted that Patterson needed mental-health treatment and that they needed more time to prepare. The court denied the motion, finding that Patterson was competent to stand trial and that counsel's lack of preparedness stemmed from delays he had caused. Patterson initially refused to appear on the first day of jury selection, but the court had him brought to the courtroom forcibly so that it could confirm first-hand that he wanted to waive his appearance. Once in the courtroom, Patterson interrupted the proceedings to announce that the lawyers who appeared on his behalf did not represent him, that he represented himself, and that he would dispatch protestors to the lawyers' homes unless they withdrew from his case.

The court refused to allow him to represent himself alone. The court expressed concern that Patterson would seize the opportunity to disrupt the proceedings and blurt out inadmissible evidence, but it advised him about some of the dangers of self-representation, adding that it would reconsider the possibility of self-representation if he showed he could behave himself. Unmoved, Patterson threatened to have his supporters "chain theirselves to [counsel's] stairs, stand in front of his house, have a bullhorn, maybe bring a spotlight, you know, and just kind of like rattle [counsel] to please get off my case and allow me to represent myself." The judge promptly ejected Patterson from the courtroom. When he returned, he addressed his supporters among the spectators in the courtroom and urged

them to go to his lawyers homes, and this time he disclosed their addresses. For the second time that day, the court ordered Patterson removed. That was the first day of voir dire.

On day two, while interviewing potential jurors, Patterson's lawyers complained that Patterson was obstructing them from using the counsel's table. Upon being confronted by the court, and outside the presence of the jurors, Patterson erupted, imploring his lawyers to "get the fuck off my case," and telling the court "you ain't gonna legal lynch me." Patterson resisted entreaties by the marshals to leave the courtroom, throwing himself on the ground. The marshals ultimately removed him by force, after which Evans, now exasperated, declared she was withdrawing from the case and stormed out of the courtroom. Although the venire members had left the room before the outburst, the court dismissed them on the chance they overheard.

The court again took up the matter of Patterson's representation one week later, when it empaneled the jury. Evans had since returned and agreed to continue her representation, but Patterson still wanted new defense lawyers. The court denied two motions that day—one from a lawyer named Scott Kamin, who had been contacted by Patterson and wanted to substitute himself as lead counsel, contingent upon a 60-day continuance, and another from Patterson, who wanted to proceed pro se under the supervision of Tommy Brewer, a criminal-defense attorney who had represented him at the earlier stages of the proceedings. Brewer, who apparently has a personal relationship with Patterson, assured the court he was familiar with the case and could be ready to proceed in a few days. The court denied the motion for the same reason it had denied Patterson's previous request to proceed pro se: Patterson would likely use the opportunity to make a spectacle of the trial and cause further delays.

The court, however, was forced to reconsider Patterson's request the next day when Evans abruptly left the courtroom, again without permission, this time because the court overruled one of her objections. Brewer, who happened to be in the courtroom observing the trial, offered to step in. The government, apparently eager to proceed, offered to update Brewer's files by furnishing copies of a few enhanced tape recordings. Days later, the court allowed Brewer to enter an appearance, after receiving assurances from both Brewer and Evans that Patterson was willing to go forward with Brewer at the helm. With Brewer now as lead counsel, the trial went forward with few disruptions until July 25, when during a routine cross-examination Patterson lashed out at his lawyers, accusing them of sabotaging the defense and demanding they withdraw. The incident escalated when Patterson physically assaulted Brewer and his co-counsel, tackling one while dragging down the other by his necktie. The judge excused the jury and again had Patterson removed from the courtroom.

Notwithstanding the disruptions, the court successfully completed the trial and sent Patterson's case to the jury, which convicted him on all counts. The court sentenced Patterson to 30 years' imprisonment.

On appeal Patterson raises an exhaustive list of arguments, but his primary challenges focus on the procedural fairness of the proceedings—the timing of the trial date, the status of his representation, and the preparedness of his appointed lawyers.

We begin with Patterson's first contention—that the district court wrongfully denied him his right to represent himself. Despite his earlier disruptions, he argues, the court should not have foreclosed the option of self-representation before giving him a chance to exercise it in accordance with courtroom protocol.

Under the circumstances, however, the court did not abuse its discretion in denying Patterson's request to represent himself. The Sixth Amendment right to self-representation does not protect defendants who abuse it by disrupting judicial proceedings. *Faretta v. California*, 422 U.S. 806, 835 n.46 (1975). The district court had already concluded that Patterson's outbursts were calculating, a strategy Patterson hinted at in his initial appearance when, after being admonished for badgering the prosecutor, he advised the judge to "get used to this." Faced with a pattern of noncompliance and belligerence, the court was not obliged to allow Patterson to proceed on his own. *See United States v. Brock*, 159 F.3d 1077, 1079-80 (7th Cir. 1998). (Indeed, given the extent of Patterson's unruliness, the court had no duty to let him back in the courtroom. *See Illinois v. Allen*, 397 U.S. 337, 343 (1970); *United States v. Carter*, 410 F.3d 942, 952 (7th Cir. 2005)). It matters not that the court here ruled prospectively, before Patterson had a chance to represent himself; a court may deny a request to proceed pro se where it is apparent that the defendant *intends* to use the opportunity as a delay tactic. *United States v. Long*, 597 F.3d 720, 726-27 (5th Cir. 2010); *United States v. Smith*, 413 F.3d 1253, 1280-81 (10th Cir. 2005); *Buhl v. Cooksey*, 233 F.3d 783, 797 (3rd Cir. 2000); *United States v. George*, 56 F.3d 1078, 1084 (9th Cir. 1995).

In a similar vein, Patterson argues that Tommy Brewer was foisted upon him without his consent in violation of his right to counsel, and that he should have been allowed to replace Evans with an appointed attorney of his choice. But the right to choose a lawyer does not extend to "'defendants who require counsel to be appointed for them.'" *United States v. Bender*, 539 F.3d 449, 454 (7th Cir. 2008) (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006)). Defendants for whom the state has provided counsel do not have the right to the appointed counsel of their choice. The court fulfills its duty to such defendants by appointing an attorney who is free of conflicts and capable of conducting a competent defense. *United States v. Cole*, 988 F.2d 681, 684 (7th Cir. 1993). Patterson got that in Brewer. Having represented Patterson earlier in the proceedings, Brewer had a

familiarity with the case that made him a natural choice to replace Evans. *See United States v. Ely*, 719 F.2d 902, 904 (7th Cir. 1982). Moreover, Brewer was the expeditious choice, as the need for a replacement without delay arose mid-trial. *See United States v. Tolliver*, 937 F.2d 1183, 1187-88 (7th Cir. 1993).

Patterson also contends that the district court erred by denying his motion for a third continuance so that he could substitute Scott Kamin as lead counsel. To prevail on this claim, however, Patterson must show that the court abused its discretion based on its consideration of a range of factors. *See United States v. Crowder*, 588 F.3d 929, 936 (7th Cir. 2009). But all the relevant factors here favored denial: a straightforward case in terms of the nature of the charges and the substance of the government's evidence; an 11-month lead time for the trial team, *see United States v. Isaacs*, 593 F.3d 517, 525 (7th Cir. 2010); Patterson's failure to identify a new defense or additional issue he would have raised had the court permitted the substitution, *see United States v. Vincent*, 416 F.3d 593, 599 (7th Cir. 2005); and the district court's reasonable belief that the motion was furthering a delay strategy, *see United States v. Farr*, 297 F.3d 651, 656 (7th Cir. 2002).

Patterson next argues that the district court erred by barring an entrapment defense at trial. He had sought to show that he initially declined a drug deal with the confidential informant but gave in only when the informant told him the government planned to frame him, and only then because he could use the opportunity to expose police corruption. Although the district court rejected the theory as implausible and unsupported, Patterson contends he presented enough evidence to establish a prima facie case of entrapment and put the government to the test of producing contrary proof.

To warrant an entrapment instruction, however, Patterson needed evidence from which a rational jury could have concluded that he was entrapped, that is, that the government took extraordinary measures to induce a crime that he was not predisposed to commit in the first place. *See United States v. Hall*, 608 F.3d 340, 343 (7th Cir. 2010); *see United States v. Haddad*, 462 F.3d 783, 789-90 (7th Cir. 2006). But Patterson never supported his "reverse-sting" theory, not even with an affidavit. Nor did he establish that the alleged inducement came at the direction of the government, as is required in this circuit. *See United States v. Neville*, 82 F.3d 750, 760 (7th Cir. 1996) (explaining that private entrapment is not a defense).

Patterson also contends that he is entitled to a new trial because the district court failed to remove several biased jurors. He says the court should have dismissed the entire panel of jurors upon discovering that several of them had expressed concerns about the presence of certain spectators in the courtroom. However, this argument was waived when defense lawyers agreed with the court, after interviews with each juror, that the panel

remained impartial.  *See United States v Zizzo*, 120 F.3d. 1338, 1349 (7th Cir. 1997).  But even if Patterson had properly preserved this issue for appeal, we would be hard-pressed to question the court's findings, grounded as they were in assurances from each juror during a mid-trial voir dire that he or she could decide the case fairly.  *United States v. Allen*, 605 F.3d 461, 464-65 (7th Cir. 2010).

Patterson also claims that the district judge showed bias toward him when she observed that he "is a very complicated human being.  There's more than one Mr. Patterson. There might be three or four of him at any given time."  But Patterson has not established that the remark was motivated by malice or personal animus, as required under 28 U.S.C. § 144, *see Tezak v. United States*, 256 F.3d 702, 718 (7th Cir. 2001), and he points to no other evidence suggesting the judge was anything but impartial.

Finally, Patterson claims that he was denied effective assistance of counsel.  He claims that Brewer doomed his defense by failing to request an entrapment instruction after the confidential informant testified for the government and that Brewer slipped up while cross examining a government witness when he asked a question that opened the door for the government to present evidence linking him to a street gang.  This argument is all but bound to fail, and would be better served by saving it for collateral review, where the record can be more fully developed.  *See Stallings v. United States*, 536 F.3d 624, 628 (7th Cir. 2008); *United States v. Harris*, 394 F.3d 543, 557-58 (7th Cir. 2005).

AFFIRMED.